[Cite as *Christen v. Continental Ents., Ltd.*, 2020-Ohio-3665.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN CHRISTEN,                          :

     Plaintiff-Appellee,          :

                                         No. 108736

     v.                           :

CONTINENTAL ENTERPRISES,                :
LTD., ET AL.,

                                       :

     Defendants-Appellants.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** July 9, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-879680

---

### *Appearances:*

The Law Office of Michael Dylan Brennan L.L.C., and
Michael Dylan Brennan, *for appellee.*

Ted S. Friedman, *for appellants.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendants-appellants, Continental Enterprises Ltd. ("Continental"),
appeals from the order of the trial court that awarded attorney fees to plaintiff-
appellee, John Christen ("Christen").

{¶ 2} For the reasons that follow, we affirm the trial court and remand for a final determination of the final amount of fees owed.

## I.   FACTUAL BACKGROUND

{¶ 3} Alan Pearlman ("Pearlman") is the managing member of Continental, which owns two 66-unit apartment buildings at 3341 and 3351 Warrensville Center Road, Shaker Heights, Ohio 44122.[1] Christen is a resident of Virginia and an employee of General Electric. His work sometimes required him to stay in the Cleveland area for extended periods of time, which led him to rent an apartment in the area.

{¶ 4} Christen and Continental entered into a written lease for Christen's rental of apartment 406 located at 3351 Warrensville Center Road, Shaker Heights, Ohio. Christen was the tenant and Continental the landlord. Pursuant to the lease, rent was $1,050 per month. Christen tendered a security deposit to Continental in the amount of $925. The security amount included a $75 deposit for a garage door opener. Apartment 406 is on the top floor of the flat-roofed apartment building.

{¶ 5} The lease term began on November 5, 2014. It ran for thirteen months and automatically renewed for another year on December 31, 2015, unless Christen provided written notice of termination by October 31, 2015. Christen did not seek to terminate the lease in October 2015, so the lease automatically renewed

---

[1] Christen named Pearlman a defendant in his personal capacity in the underlying complaint because it was unclear whether Pearlman had failed to maintain formalities as the managing member of Continental and might, therefore, be personally liable to Christen. Before trial, the trial court granted Christen's oral motion to dismiss Pearlman. Pearlman is not party to this appeal.

for a one-year term that automatically terminated on December 31, 2016. It is undisputed that Christen paid all rent due under the lease.

{¶ 6} Around March 30, 2016, Christen noticed some water damage that originated in the ceiling of the bathroom and leaked down the wall. Christen reported this damage to Pearlman by email. Christen also informed Pearlman that his garage door opener was not working and that he expected to be in Cleveland for work less often and asked when he could call Pearlman to discuss possibly terminating the lease early. Pearlman responded by email the next day, writing "You can call me when you have the garage door opener with you and I will tell you how to reprogram it. We will investigate the roof leak."

{¶ 7} On April 4, 2016, Christen emailed Pearlman to ask whether anyone had looked at the damage in his apartment and checked the roof. The same day, Pearlman replied that he was waiting for the water on the roof to dry up in order to find the "small opening that is causing the leak into your apartment." Pearlman did not repair the interior water damage in Christen's apartment. Pearlman testified that he intended to wait to repair the damage until Christen moved out at the end of the year.

{¶ 8} In the summer of 2016, Christen's work took him to Cleveland less often. During one of his infrequent stays at his apartment, he noticed that the interior water damage had not been repaired. Other tenants also emailed Pearlman to complain about water damage in their apartments, but the emails themselves were inadvertently permanently deleted before this litigation began. Christen also

noticed that his air conditioner was out of service and testified that it blew hot air into his apartment. He often did not stay at the apartment that summer due to the broken air conditioning.

{¶ 9} On June 29, 2016, Christen emailed Pearlman for an update on the leaky ceiling, although he did not notice any new damage at that time. Christen again informed Pearlman that the air conditioning was still not working. Neither Pearlman nor Continental responded to this email. Christen believed someone eventually repaired the air conditioning and it worked periodically thereafter. However, he testified that the water damage to the wall remained in the same condition throughout his tenancy as when he first noticed the damage in March 2016.

{¶ 10} On December 22, 2016, Christen notified Pearlman by email that he was moving out and asked where he should leave the keys. Pearlman responded that he should leave the keys in the rental deposit box in an envelope with his name on it. Christen hired cleaners to clean the apartment before he moved out. He vacated the premises on the 22 or 23 of December 2016 and left the keys in the box as instructed. Christen testified that he included a note with the keys that provided his forwarding address for the return of his security deposit. Before leaving the apartment, Christen took a photograph of the still-unrepaired water damaged wall that had been in that condition since March 2016.

{¶ 11} On January 31, 2017, Pearlman emailed Christen to inform him that his security deposit of $925 would not be returned. Pearlman claimed $75 for the

unreturned garage door opener; $700 to repair and replace the water-damaged wall; and $150 to refinish the stained bathtub. Pearlman claimed the water damage was due to Christen's failure to notify Pearlman of the damage when it first occurred. Christen was willing to pay the $75 for the garage door opener, but disputed the deductions for the water-damaged wall and bathtub repairs. He claimed that his emails in March, April, and June notified Pearlman of the water damage and that the bathtub was not stained when he vacated the apartment. Pearlman refused to return the security deposit.

## II. PROCEDURAL BACKGROUND

{¶ 12} Christen believed he was entitled to the security deposit and engaged counsel at a rate of $250 per hour on April 21, 2017, to recover his deposit. Around April 25, 2017, Christen's counsel sent a letter to Pearlman that requested payment of the $925 security deposit, $925 in statutory damages, and $500 in legal fees to that date. It is not clear based on the record whether Pearlman or Continental (collectively "Landlords") responded, but they did not return the security deposit at that time.

{¶ 13} On May 2, 2017, Christen filed a complaint against Continental and Pearlman. Christen brought one count against Continental and a second against Pearlman personally. Both counts sought to recover the $925 security deposit, damages, and reasonable attorney fees under R.C. 5321.16.

{¶ 14} On July 6, 2017, Landlords filed an answer and counterclaim on July 6, 2017. They denied Christen's allegations and sought damages in the amount of

$5,000.00 for Christen's alleged violations of R.C. 5321.05(A)(1) and (5). They also sought reasonable attorney fees pursuant to R.C. 5321.05(C)(1). Landlords claimed they were entitled to damages for the cost of the bathtub and water damage repairs and also to several months' rent payments during which the apartment allegedly could not be rented due to the condition in which Christen left the apartment. Both parties filed motions to dismiss. The trial court denied both motions.

{¶ 15} By telephone conference on July 24, 2017, the trial court ordered that discovery be completed by October 24, 2017, and set trial for April 4, 2018. At a pretrial hearing on October 24, 2017, the court extended the discovery deadline to December 15, 2017. The parties failed to settle at the final pretrial hearing on February 22, 2018. At Landlords' unopposed request for continuance, the trial was postponed and reset for June 20, 2018.

{¶ 16} On May 25, 2018, Christen moved for a protective order and to compel written discovery responses from Landlords. Christen attached correspondence between the parties' counsel that detailed the deficiencies. He sought a protective order preventing Landlords from taking the deposition of Christen before they had answered his written discovery, which he served on September 14, 2017.

{¶ 17} The motion to compel sought separate discovery responses from Continental and Pearlman. Christen claimed that Continental provided incomplete responses and that Pearlman had not responded at all to Christen's document requests, requests for admission, and interrogatories. In particular, Christen sought

from Continental documents related to the history and maintenance of the apartment building roof, documents relating to alleged repairs, and documents related to the counterclaim. Christen claimed that Continental had failed to produce any documents except for a few photos. Christen further claimed he had to postpone depositions of Continental and Pearlman due to their delinquent written discovery responses.

{¶ 18} The court held another telephone conference on June 6, 2018. Afterwards, the court extended the written discovery deadline to June 22, 2018, and ordered that depositions be completed by August 3, 2018. The court postponed the trial date to September 24, 2018.

{¶ 19} Pearlman moved for summary judgment on May 30, 2018. The court denied summary judgment on September 19, 2018, stating that "defendant filed the motion out of rule."

{¶ 20} The court held a pretrial on July 12, 2018, at which the court ordered Pearlman's deposition to take place on July 27, 2018, at the courthouse. The court also noted that it would hold Christen's motion to compel in abeyance until after Pearlman's deposition.

{¶ 21} On September 19, 2018, the trial was cancelled and the case was referred to arbitration to occur on October 23, 2018. The arbitration panel found for Christen on the complaint and counterclaim, but did not award attorney fees. Afterwards, Christen's counsel sent correspondence to Landlords' counsel dated November 16, 2018. The letter was a post-arbitration settlement demand that

requested the security deposit, statutory amount, and attorney fees incurred to date. Christen's November 2018 demand sought payment of $1,700 plus $13,862.20 in attorney fees for a total of $15,562.20. Again, the record does not clarify whether Landlords responded, but it is clear that the parties did not settle at that time. On November 21, 2018, Christen appealed the arbitration on the grounds that the arbitration panel failed to award attorney fees pursuant to R.C. 5321.16.

{¶ 22} The court set trial for March 25, 2019. The parties failed to settle at the final pretrial held on March 7, 2019. Both parties filed trial briefs. The bench trial proceeded as scheduled between Christen and Continental after the court granted Christen's oral motion to dismiss Pearlman. The court heard testimony from Christen and Pearlman and entered judgment for Christen on count one of the complaint, the only count against Continental. The trial court also found for Christen on Continental's counterclaim.

{¶ 23} The court awarded Christen the $925.00 security deposit, less the $75.00 cost of the garage door opener that he failed to return. The court also awarded Christen damages in the amount of $850.00 pursuant to R.C. 5321.16(C) for the amount of the security deposit wrongfully withheld. In total, the court awarded Christen $1,700.00 and reasonable attorney fees pursuant to the same statute. Continental did not appeal from this judgment.

{¶ 24} A separate hearing on attorney fees proceeded on May 29, 2019. Christen testified at the hearing. He stated that he had engaged counsel at a rate of $250 per hour on April 21, 2017, and that he had received three invoices from

counsel: (1) an invoice dated May 2017 in the amount of $2,031.95; (2) an invoice dated June 27, 2017, in the amount of $550; and (3) an invoice dated April 24, 2019, in the amount of $20,180.25. The invoices included amounts for attorney fees and expenses. He also testified that counsel informed him that Christen was responsible for the expert witness's fees in the amount of $1,720. On cross-examination, Christen testified that he had paid in full the amounts in the first two invoices.

{¶ 25} Christen presented Douglas Whipple ("Whipple"), a litigation attorney with nearly forty years' experience, as an expert witness. Whipple testified that he reviewed Christen's case file, including the engagement letter; pleadings; statutes, rules, and case law related to attorney fees; motions; journal entries; trial briefs; the final judgment entry; and all three invoices for attorney fees and expenses. He also testified that he reviewed Christen's counsel's background and civil litigation experience.

{¶ 26} Whipple offered opinions to a reasonable degree of professional certainty. He acknowledged that the attorney fees far exceeded the amount of the security deposit Christen sought to recover, but considered the fees reasonable because it was Landlords that caused the attorney fees to be so much higher than the security deposit. He specifically referenced that Continental refused to return the security deposit at any time before trial and brought a counterclaim. Both of those actions, in his opinion, rendered the attorney fees reasonable even though they exceeded the amount of the security deposit. He also opined Christen's counsel had to file a protective order, a motion to compel, and had the additional burden of

conducting Pearlman's deposition in the trial court's jury room because it had to be held under the court's supervision. Further, according to Whipple's testimony, Continental and Pearlman had been civil defendants on seventeen prior occasions.

{¶ 27} Whipple also considered that arbitration and trial would not have been necessary had Landlords returned the security deposit in the first instance or agreed to return the deposit and pay statutory damages and attorney fees at some earlier date. He specifically referenced the letters from Christen's counsel to Pearlman dated April 25, 2017, and November 16, 2018, in which Christen requested payment of the security deposit, damages, and legal fees to that date.

{¶ 28} Whipple further pointed out that Christen's counsel was unable to work on other cases for other clients while working on Christen's case. He testified that $250 per hour plus expenses was a reasonable fee. He stated that he would have expected a reasonable fee to range between $225 to $280 per hour and noted that he would not have taken the case for less than $250 per hour.

{¶ 29} Regarding the invoices, Whipple testified that he reviewed each invoice line by line and that each invoice was reasonable and the charges necessary. He did not find any instance in which the hours were unreasonable for the task. He noted that Christen's counsel charged a lot of hours to depose Pearlman, but opined that the hours were reasonable because Landlords did not cooperate toward the completion of the deposition. Continental cross-examined Christen, Whipple, and Christen's counsel at the fee hearing; Continental did not offer any of its own witnesses.

{¶ 30} On June 7, 2019, the court stated that it had considered all exhibits, Whipples' expert report, case law, and witness testimony and entered judgment in Christen's favor. The court found that $23,500.00 in attorney fees reasonable under R.C. 5321.16(C). The June 7, 2019 judgment entry stated:

Hearing held on 5/29/2019 regarding attorney's fees for plaintiff's counsel. Counsel for plaintiff present. Plaintiff John Christen present. Counsel for defendant present. Defendant Alan Pearlman present. Court reporter present. The court has considered all exhibits, plaintiff's expert report, case law referenced and testimony including that from plaintiff's expert. The court finds attorney's fees reasonable in the amount of $23,500.00. It is so ordered. Court cost assessed to the defendant(s). Notice issued

{¶ 31} On June 10, 2019, the court provided another judgment entry directing Continental to pay the $23,500.00 "to plaintiff's counsel." The June 10, 2019 judgment entry states:

This entry is to further clarify the courts 6/7/2019 entry. The court finds plaintiff's attorney's fees are reasonable in the amount of $23,500.00 the court further directs defendant [C]ontinental [E]nterprises [L]td[.], et al[.] to pay this amount to plaintiff's counsel. Notice issued.

{¶ 32} It is from the award of attorney fees that Continental now appeals. Continental assigned three assignments of error:

### Assignment of Error One

The trial court erred when it determined that the Plaintiff was entitled to $23,000.00 in attorney fees pursuant to R.C. § 5321.16(C), based on a claim to recover a $850.00 security deposit. This award included attorney fees attributable to all claims that were litigated in the case. However, R.C. § 5321.16(C) only entitled the Plaintiff to attorney fees that were solely attributable to the Plaintiff's security deposit claim.

## Assignment of Error Two

The trial court's award of $23,500.00 in attorney fees was an abuse of discretion because the award was disproportionate and unreasonable compared to the $850.00 security deposit that the Plaintiff sought to recover.

## Assignment of Error Three

The trial court's clarification entry of 6/10/2019 is an abuse of discretion as Plaintiff's counsel is not a party to this action.

{¶ 33} For the reasons that follow, we affirm the trial court.

## III. STANDARD OF REVIEW

{¶ 34} "Determination of the amount to be awarded for reasonable attorneys [sic] fees under § 5321.16 lies within the sound discretion of the trial judge." *Hoerner v. Gms Mgt. Co.*, 8th Dist. Cuyahoga No. 46736, 1983 Ohio App. LEXIS 14501, 5-6 (Dec. 15, 1983). "We review a trial court's award of attorney fees for abuse of discretion." *Davis v. Wesolowski*, 8th Dist. Cuyahoga No. 108606, 2020-Ohio-677, ¶ 27. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 21, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 35} "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*, quoting *AAAA Ents. Inc. v. River Place Community Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A trial court also acts unreasonably and abuses its discretion when 'the amount of

fees determined is so high or so low as to shock the conscience.'" *Id.*, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991).

{¶ 36} "[E]vidence of reasonableness 'may take the form of testimony, affidavits, answers or other forms of sworn evidence. As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed absent an abuse of discretion.'" *Cleveland v. CapitalSource Bank*, 8th Dist. Cuyahoga No. 103231, 2016-Ohio-3172, ¶ 13, quoting *R.C.H. Co. v. 3-J Machining Serv.*, 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57, ¶ 25.

## IV. LAW AND ANALYSIS

{¶ 37} As an initial matter, we note that the trial court did not set forth the exact reasons for only awarding $23,500 rather than the claimed $24,482.20. However, the court did hold a separate hearing on attorney fees and stated that it reviewed all the evidence and relevant case law. In particular, the court heard expert testimony from Whipple, who opined that the fees were reasonable in light of the factors set forth in Prof.Cond.R. 1.5(a). We find that the record is sufficient for us to address Continental's assignments of error and make the determination that the trial court did not abuse its discretion. *See Hoerner v. Gms Mgt. Co.*, 8th Dist. Cuyahoga No. 46736, 1983 Ohio App. LEXIS 14501, 7-8 (Dec. 15, 1983) (affirming attorney fee award where the trial court heard expert testimony at a fee hearing and mentioned code provisions relevant to fee awards in the judgment opinion.); *Blisswood Village Home Owners Assn. v. Cleveland Community Reinvestment,*

*LLC*, 8th Dist. Cuyahoga No. 105450, 2018-Ohio-2299, ¶ 23 (affirming award of attorney fees as discovery sanction and under R.C. 5311.18(A)(1)(b) where nothing in the record indicated the award was unreasonable, arbitrary, or unconscionable and the trial court relied on an affidavit attesting to the award's reasonableness).

## A.  Assignment of Error One

{¶ 38} In its first assignment of error, Continental argues that the attorney fee award is unreasonable because it exceeds the amount of the security deposit wrongfully withheld.  Continental contends that the fee award must relate solely to the fees attributable to Christen's security deposit claim under R.C. 5321.16 against Continental and not to any fees incurred in pursuing the security deposit claim against Pearlman, who was dismissed before trial.  In particular, Continental claims that R.C. 5321.16 does not allow Christen to recover fees incurred in pursuing the security claim against Pearlman because the claim against Pearlman involved separate elements and separate facts apart from Christen's claim against Continental.  We find no merit to Continental's first assignment of error.

{¶ 39} R.C. 5321.16(B) and (C) provides:

(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new

address as required, the tenant shall not be entitled to damages or attorneys fees under division (C) of this section.

(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

{¶ 40} "It is well settled that attorney fees are mandatory when a security deposit is wrongfully withheld." *Davis v. Wesolowski*, 8th Dist. Cuyahoga No. 108606, 2020-Ohio-677, ¶ 30, quoting *Smith v. Padgett*, 32 Ohio St.3d 344, 513 N.E.2d 737 (1987), paragraph three of the syllabus; *see also Jensen v. Blvd. Invest. Ltd.*, 8th Dist. Cuyahoga No. 103658, 2016-Ohio-532. "[T]he award of attorney fees must relate solely to the fees attributable to the tenant's security deposit claim under R.C. 5321.16, and not to any additional claims." *Smith v. Padgett* at 349. A "tenant may not use R.C. 5321.16(C) to recover attorney fees attributable to the additional claims." *Id.* at 349-350. *See also Lloyd v. Roosevelt Properties*, 8th Dist. Cuyahoga No. 105721, 2018-Ohio-3163, ¶ 42, citing *Padgett* at 349. However, "courts have awarded attorney fees that relate to both the security deposit claim and to defending against a landlord's counterclaim for alleged damages and/or unpaid rent when such claims are virtually indivisible." *Lloyd* at ¶ 41, citing *Lacare v. Dearing*, 73 Ohio App.3d 238, 241-242, 596 N.E.2d 1097 (11th Dist.1991); *Buck v. Georgian Manor Invests.*, 8th Dist. Cuyahoga No. 67170, 1995 Ohio App. LEXIS 1254 (Mar. 30, 1995).

{¶ 41} Continental primarily relies on *Lloyd v. Roosevelt Properties, Ltd.* for its argument, but its reliance is misplaced. In *Lloyd*, the tenant filed a complaint

asserting negligence, wanton misconduct, breach of warranty of habitability, constructive eviction, breach of contract, and return of security deposit under R.C. 5321.16. The landlord filed a counterclaim for unpaid rental payments. The trial court awarded the tenant attorney fees. On appeal, the court held that the trial court's award of attorney fees was too broad because it included fees incurred in connection with all the other claims that were distinguishable from the tenant's security deposit claim. *Id.* at ¶ 44-48. *Lloyd* reasoned that the other claims were distinguishable from the security deposit claim because, unless there was property damage, the tenant was entitled to the security deposit; no property damage was alleged. *Id.* at ¶ 46-47.

{¶ 42} Continental argues that Christen's claim against Pearlman involved separate elements and facts that prohibit Christen from recovering fees in pursuit of that claim. Continental contends that this assertion is supported by the fact that Christen served separate discovery requests to Christen and Pearlman. We find that, unlike in *Lloyd,* all of Christen's attorney fees were incurred to recover his security deposit under R.C. 5321.16. Although the discovery requests to Continental and Pearlman were not identical, they were substantially similar and it is unlikely that Christen's fees would have been significantly different had he only prepared one set of discovery. More importantly, serving separate discovery requests does not

change the fact that Christen conducted all discovery in this case to pursue his security deposit claim.[2]

{¶ 43} Similarly, that Christen's claim against Pearlman was voluntarily dismissed before trial also does not change that all Christen's fees were incurred in pursuit of his security deposit claim. Christen represented that he raised the claim against Pearlman because it was unclear whether Pearlman had maintained the appropriate formalities as managing member of Continental to avoid personal liability for the security deposit claim. Regardless of Pearlman's personal liability and, even if he had not been a named defendant in the complaint, Christen certainly would have deposed Pearlman as managing member of Continental.

{¶ 44} There is no support in the record or relevant case law that would allow us to conclude that Christen cannot recover attorney fees for his security deposit claim against Pearlman. Accordingly, we find that the trial court did not abuse its discretion in awarding fees related to Christen's pursuit of his security deposit claim against Pearlman. Continental's first assignment of error is overruled.

### B. Assignment of Error Two

{¶ 45} Continental argues in its second assignment of error that the trial court's fee award of $23,500 was an abuse of discretion because the award is

---

[2] We also note that Christen is entitled to recover fees spent defending against the counterclaim. Unlike in *Lloyd*, the counterclaim did not include a claim for unpaid rents and the determination of Christen's security deposit claim was indivisible from Continental's counterclaim. In order to prevail on his security deposit claim and against Continental's counterclaim, Christen had to show that he was not responsible for the property damage alleged in Continental's counterclaim.

disproportionate to the $925 security deposit Christen sought to recover, of which the court awarded $850. Continental identifies four grounds for its contention that the fee award is unreasonable: (1) the invoices of Christen's counsel include four entries that include block-billing; (2) counsel submitted duplicate bills; (3) the invoices included charges for 42 emails over the course of the litigation that amounted to $2,100.00; and (4) the invoices included charges for nonrecoverable items like expert witness reports and expenses related to the issue of attorney fees that were not related to recovering the security deposit. None of Continental's arguments reveal an abuse of discretion.

{¶ 46} Continental first claims that it was an abuse of discretion to award fees based on block-billed time entries in violation of *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068. We find that *Rubino* does not preclude an award of fees based on block-billed entries in this case.

{¶ 47} In *Rubino*, the Ohio Supreme Court clarified that it "will no longer grant attorney-fee applications that include block-billed time entries." *Rubino* at ¶ 7. The court explained that block billing makes it difficult to determine whether time spent on a particular task was reasonable. *Id.* at ¶ 6. While we note that the best practice is to submit bills with separate time entries for each task, any block-billing that occurred in this case would not have prevented the trial court from determining that the time spent in pursuit of the security deposit claim was reasonable. *See Rubino* at ¶ 6. As discussed, all the claims and counterclaims in this case involved issues solely related to Christen's security deposit claim under R.C.

5321.16 and reasonable fees were to be awarded in pursuit of that claim. Thus, the award of block-billed fees cannot constitute an abuse of discretion under these circumstances.

{¶ 48} Second, Continental argues that the fee award was unreasonable because the invoices reflect duplicate charges for the same tasks. Continental identified one such duplication for a task completed on October 17, 2017. The duplication amounted to $75. Our review of the invoices reveals two other duplicate charges, one on May 30, 2018, for $50 and another on October 20, 2018, for $50. Christen presented evidence and sought a fee award of $24,482.20, but the trial court awarded $23,500 in fees. The record demonstrates that the trial court reduced the award by more than the duplicative amount of $175. The mere existence of a few duplicative charges on the bill does not demonstrate that the award was unreasonably, arbitrarily, or unconscionably high where, as here, the record supports that the trial court deducted enough from the award to account for the duplicative amounts.

{¶ 49} Third, we find no basis to find that awarding fees for email communications between counsel and his client was an abuse of discretion. We first note that counsel was required to maintain reasonable contact with Christen throughout the case pursuant to Prof.Cond.R. 1.4(a). In addition, Whipple testified at the fee hearing that the charges for the email correspondence were reasonable given the length and complexity of the case. Christen engaged counsel on April 21, 2017. The bench trial occurred nearly two years later on March 25, 2019, after an

arbitration on October 23, 2018. Considering Whipple's testimony, the length of the case, and the necessity that attorneys communicate with their clients, the trial court did not abuse its discretion to the extent it awarded fees based on email correspondence between Christen and his counsel.

{¶ 50} Finally, we find no abuse of discretion regarding costs and expenses incurred to recover attorney fees, such as obtaining Whipple's expert report. The Ohio Supreme Court has held a "commonly accepted view of the purpose underlying this statute [R.C. 5321.16] is that attorney fees are provided for in order to ensure the return of wrongfully withheld security deposits at no cost to tenants." *Christe v. Gms Mgt. Co.*, 88 Ohio St.3d 376, 378, 2000-Ohio-351, 726 N.E.2d 497. *See also Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 43 (awarding portion of fees and costs incurred in seeking recovery of attorney fees, including fees related to expert costs).

{¶ 51} Further, preparing for and attending the fee hearing, including obtaining Whipple's expert report, relate to Christen's recovery of reasonable attorney fees under R.C. 5321.16 in connection with his security deposit claim. "It is well established that the time spent in establishing entitlement to an amount of attorney fees is compensable. Counsel is also entitled to fees for his representation during the appellate process." (Citations omitted.) *Turner v. Progressive Corp.*, 140 Ohio App.3d 112, 117-118, 746 N.E.2d 702 (8th Dist.2000). To deny Christen recovery for such fees would violate the purpose of the statute and require Christen,

an out-of-state plaintiff who twice prevailed on the merits of his security deposit claim, to bear the costs of recovering his security deposit from Continental.

{¶ 52} In sum, based on our review of the record, we do not find that the trial court abused its discretion in awarding $23,500 in attorney fees. Christen presented three invoices that totaled $22,762.20 and also sought recovery of expert fees in the amount of $1,720, which brought his total fee request to $24,482.20. The trial court, upon reviewing the testimony, expert testimony, and exhibits presented at the fee hearing, determined that a fee award of $23,500 was reasonable. Nothing in the record indicates the award was unreasonable, arbitrary, or unconscionable.

{¶ 53} Christen's expert, Whipple testified to a reasonable degree of certainty that Christen's counsel's rate and hours were reasonable and necessary. Further, Continental vigorously defended Christen's action and prosecuted a counterclaim up to and including trial. As Whipple testified, the fees in this case are largely the result of Continental's contentious behavior throughout the proceedings. From the start, Christen only sought the return of his $925 security deposit, statutory double damages, and reasonable fees. The parties apparently could not reach a reasonable settlement before Christen filed suit or anytime thereafter, including after the arbitration panel found in Christen's favor on the merits of the complaint and counterclaim. During discovery, Christen had to file a motion for protective order and to compel written discovery from Christen and Pearlman. In addition, Pearlman's deposition had to be conducted at the courthouse under the court's supervision, due to Pearlman's lack of cooperation in the discovery process.

{¶ 54} There is also evidence in the record to support some deduction in the amount of the award from what Christen claimed. As discussed, there were four instances of double-billing that amounted to $175 and the trial court's deduction is sufficient to cover that amount. Therefore, the award does not constitute an abuse of discretion and we will not disturb the award.

{¶ 55} Accordingly, we overrule Continental's second assignment of error.

### C. Assignment of Error Three

{¶ 56} In its third assignment of error, Continental argues that the trial court's June 10, 2019 judgment entry is an abuse of discretion because it orders Continental to pay the fee award to Christen's counsel rather than to Christen. We find that this assignment of error lacks merit. "When a tenant has actually incurred no out-of-pocket attorney fees, the amount of fees determined to be proper should be awarded directly to the attorney or organization that provided the legal services." *Gaitawe v. Mays*, 2d Dist. Montgomery No. 25083, 2012-Ohio-4749, ¶ 10, citing *Lewis v. Romans*, 70 Ohio App.2d 7, 10, 433 N.E.2d 622 (8th Dist.1980) (awarding fees directly to Legal Aid Society where tenant it represented did not incur any legal expenses). Christen testified that he has only paid a portion of his counsel's legal fees. Accordingly, we do not find an abuse of discretion in the trial court ordering Continental to pay the fee award to Christen's counsel directly.

{¶ 57} Continental's third assignment of error is overruled.

{¶ 58} Judgment affirmed and remanded for a final determination of the amount owed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR