[Cite as *Brantley, Inc. v. Tornstrom*, 2024-Ohio-2908.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| BRANTLEY, INC., ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 113425 |
| v. | : | |
| TODD W. TORNSTROM, ET AL., | : | |
| Defendants-Appellees. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932410

*Appearances:*

Zipkin Whiting Co., L.P.A., Kevin M. Gross, and Lewis A. Zipkin; BurkesLaw, LLC, and John F. Burke, III, *for appellants*.

Walter | Haverfield LLP, Michael R. Cantu, and John N. Neal, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants, Brantley Inc., 3637 Green Road Company, Ltd., Lewis A. Zipkin ("Zipkin"), and Lewis A. Zipkin, Trustee (collectively "appellants") appeal two orders granting summary judgment in favor of defendants-appellees,

Pricom Asphalt Sealcoating, Inc., d.b.a. American Asphalt & American Asphalt Sealcoating ("Pricom" or "American Asphalt") and Todd. W. Tornstrom ("Tornstrom") (collectively "appellees") on appellants' claim against appellees and on appellees' counterclaim against appellants. Appellants also appeal an order granting attorney fees to appellees. Appellants claim the following errors:

1. The trial court erred by allowing Pricom to proceed with and prevail on its counterclaim because the Appellants presented sworn summary judgment evidence indicating Pricom lacked standing and was not the real party in interest.

2. The trial court erred by determining that provision on the back of a standardized form document allowing only one party to recover its attorney fees, win or lose, qualified as a valid and enforceable fee-shifting provision under Ohio law.

3. The trial court erred by granting Pricom's request for the full amount of attorney fees it sought to recover because the time entries from Pricom's legal counsel contained improper block-billing and not all the fees were attributable to "collection."

4. The trial court erred by allowing Pricom's attorney fee expert to testify even though the expert, the report, and the time entries acting as the foundation for the report were not timely disclosed to Appellants.

5. The trial court erred by granting Pricom's defensive summary judgment motion because the Appellants presented an uncontroverted architectural expert report demonstrating that the substandard work performed on the Appellants' properties caused damage.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In the fall of 2019, Zipkin called American Asphalt seeking estimates for asphalt work at seven different properties owned by appellants. Tornstrom visited appellants' properties and prepared quotes for each one. (Complaint ¶ 19.)

The total price for all the properties was $35,000 to $40,000. (Zipkin depo. at 69.) Zipkin informed Tornstrom that appellees' budget for the work was $22,000, and the parties removed two properties and certain work items from the scope of the work in order to fit appellees' budget. (Zipkin depo. at ¶ 70; Tornstrom depo. at 20.)

{¶ 4} Zipkin gave Tornstrom his American Express credit card to pay the $11,000 downpayment on the project before the work began because it was late in the season and appellees needed to acquire the materials for the work quickly. (Zipkin depo. at 73; 96-97.) On October 5, 2019, American Asphalt charged Zipkin's American Express credit card $11,000 for the downpayment. (Zipkin depo. at 75, 96-97.) The remainder of the contract price was to be paid in two installments after the work was complete. The first installment of $5,500 was to be paid 30 days after completion, and the second installment of $5,500 was to be paid 30 days after the first installment. (Zipkin depo. at 100-101.)

{¶ 5} American Asphalt began work in October and completed the work in early November 2019. (Complaint ¶ 30.) On November 5, 2019, after completing the work, American Asphalt charged the first installment due in the amount of $6,759 on Zipkin's American Express credit card. (Zipkin depo. at 96-97.) The installments were increased from $5,500 to $6,759 because Zipkin requested an additional sealcoating service that he had originally declined. (Tornstrom depo. at 43-46, 53-54.) Two weeks later, on November 20, 2019, Zipkin emailed American Asphalt asking it not to charge his credit card "until" he obtains approval for the invoices. (Ex. 11 to Zipkin depo. at 101-102.) However, the first installment had

already been charged, and Zipkin later challenged the $6,759 charge on his American Express credit card, claiming it was not authorized.

{¶ 6} Meanwhile, Zipkin complained that the asphalt work had not been done properly. He claimed appellees changed the pitch of one driveway that resulted in an unnatural accumulation of ice and snow in winter, that cracks in the driveways were not properly prepared and filled, and the paint used for line striping was faint in multiple areas. (Complaint ¶ 31-35.) As a result, appellants filed a complaint asserting claims for breach of contract, fraud, conversion, civil liability for theft, and violations of the Consumer Sales Practices Act ("CSPA").

{¶ 7} Appellants alleged that their fraud, conversion, theft, and CSPA claims arose when appellees charged Zipkin's American Express credit card for the first installment of $6,759.50 in November 2019. In their prayer for relief, appellants requested compensatory, economic, noneconomic, and consequential damages in excess of $25,000. (Complaint p. 15.) Appellants also sought punitive damages from each defendant "in an amount in excess of $25,000 due to their malicious conduct, bad faith, fraud, willfulness, wantonness, recklessness and conscious disregard for Plaintiffs' rights." (Complaint p. 15.)

{¶ 8} Appellees filed an answer and counterclaim, alleging a single count of breach of contract due to appellants' failure to pay the contract price. Appellees requested damages "in an amount not less that Forty Thousand and 00/100 Dollars ($40,000)." (Answer and Counterclaim p.12.) The counterclaim further sought "to

recover their costs, fees, expenses, attorney's fees, and any other relief that is just and appropriate[.]" (Answer and Counterclaim p. 12.)

{¶ 9} The trial court referred the case to mediation and, when a settlement was not reached, to arbitration. An arbitration panel ruled in favor of appellees on all of appellants' claims and awarded Pricom damages in the amount of $15,000 on its counterclaim for breach of contract. Appellants appealed the arbitration decision.

{¶ 10} Back in the trial court, appellees filed a motion for summary judgment on all of appellants' claims. Appellants opposed the motion, arguing appellees failed to perform the asphalt work in accordance with industry standards, and they submitted an expert report from L. Reed Carpenter, Jr. ("Carpenter"), an architect, in support of the motion. They also withdrew their conversion and theft claims because American Express reversed the charge of $6,759.50, that was made for the first installment. The court granted appellees' motion and entered judgment in their favor on all the remaining claims in appellants' complaint, but appellees' breach-of-contract claim remained pending.

{¶ 11} Appellants filed a motion for judgment on the pleadings contesting the enforceability of the attorney-fee provision in the parties' contract. Appellees opposed the motion, arguing that appellants' argument involved a factual dispute and, therefore, failed to meet the requirements for judgment on the pleadings under Civ.R. 13(C). The trial court agreed and denied the motion.

{¶ 12} Appellees subsequently filed a motion for summary judgment on their counterclaim for breach of contract. After a full briefing, the trial court granted appellees' motion and awarded damages to appellees in the amount of $18,150, plus attorney fees and costs. Following a hearing, the court awarded appellees attorney fees in the amount of $79,294.80 and costs of $995.56. Appellants now appeal the trial court's orders granting summary judgment in favor of appellees and awarding appellees damages totaling $98,440.36.

## II. Law and Analysis

### A. Real-Party-in-Interest

{¶ 13} In the first assignment of error, appellants argue that Pricom is not the real party in interest and that it, therefore, lacked standing to proceed on its breach-of-contract claim against appellants. They assert that "one must first be an actual party to the contract at issue," and that Pricom was not a party to appellants' contract for asphalt work. (Appellants' brief p. 19.)

{¶ 14} Civ.R. 17 governs real party in interest and states that "[e]very action shall be prosecuted in the name of the real party in interest." "A real party in interest is 'one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefitted or injured by the outcome of the case.'" *State ex rel. Browning v. Browning*, 2012-Ohio-2158, ¶ 38, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24-25 (1985).

{¶ 15} However, "[l]ack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court." *Id.* "If one who is not the

real party in interest asserts a claim, then the party lacks standing to prosecute the action, but the court is not deprived of subject matter jurisdiction." *Id*., citing *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70 (1998), citing *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 420 (1996); and *State ex rel. LTV Steel Co. v. Gwin*, 64 Ohio St.3d 245, 251 (1992).[1] Thus, the defenses of standing and real party in interest may be waived. *State v. Martin*, 2005-Ohio-6482, ¶ 11 (8th Dist.), citing *Suster* at 78; *Hang-Fu v. Halle Homes, Inc.*, 2000 Ohio App. LEXIS 3625 (8th Dist. Aug. 10, 2000); *Mikolay v. Transcon Builders, Inc.*, 1981 Ohio App. LEXIS 11690 (8th Dist. Jan. 22, 1981).

{¶ 16} Appellants invoked the trial court's subject-matter jurisdiction when they filed the complaint for breach of contract against Pricom. Both appellants' complaint and Pricom's counterclaim are based on the same contract. By naming Pricom as a defendant in its complaint, appellants admitted that Pricom was the real party in interest to the contract. "An admission in a pleading is equivalent to proof of the fact admitted and, therefore, is evidence that a court may consider in rendering a decision on summary judgment." *APCO Industries. v. Braun Constr. Group., Inc.*, 2020-Ohio-4762, ¶ 38 (10th Dist.), citing *BAC Home Loans Servicing, L.P. v. Vanjo*, 2015-Ohio-4317, ¶ 24 (11th Dist.). *See also Pope ex rel. Barkley v. Univ. Settlement, Inc.*, 1999 Ohio App. LEXIS 1165, * 5 (8th Dist. Mar. 25, 1999), citing *St. Paul Fire & Marine Co. v. Evans*, 1998 Ohio App. LEXIS 4226 (8th Dist.

---

[1] "The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter." *Browning*, 2012-Ohio-2158, citing Civ.R. 17.

Sept. 10, 1998) ("According to the law of pleading, an admission in a pleading dispenses with proof and is equivalent to proof of the fact.").

{¶ 17} Further, appellants never sought to amend their complaint even after they discovered that another entity, XYZ Company L.L.C. ("X.Y.Z."), shared the American Asphalt tradename with Pricom and may have employed the workers who performed the asphalt work at appellants' properties. Appellants opposed a motion to add X.Y.Z. as an additional party-defendant counterclaimant. They, therefore, waived the defenses of standing and real party in interest by naming Pricom as the defendant in their breach-of-contract action and by refusing to substitute the party they now claim is the real party in interest as the proper defendant.

{¶ 18} The first assignment of error is overruled.

## B. Attorney-Fee Provision

{¶ 19} In the second assignment of error, appellants argue the attorney-fee provision in the parties' contract is not enforceable because it only allows one party to recover attorney fees.

{¶ 20} The interpretation of a written contract is a matter of law subject to de novo review. *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9. In a de novo review, we review the merits of the case independently, without any deference to the trial court. *Sosic v. Stephen Hovancsek & Assocs., Inc.*, 2021-Ohio-2592, ¶ 21 (8th Dist.).

{¶ 21} Under the "American rule," a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation. *Cruz v. English Nanny & Governess School*, 2022-Ohio-3586, ¶ 35. There are three exceptions to this rule:

(1) when a statute creates a duty to pay attorney fees, (2) when the losing party acted in bad faith, and (3) when the parties contracted to shift the fees. *Id*. at ¶ 36.

{¶ 22} Appellants argue the attorney-fee provision in the parties' contract violates the "American rule" because it only allows one party, Pricom, to recover attorney fees incurred for the purpose of collection. They cite *Calabrese Law Firm v. Christie*, 2024-Ohio-579 (8th Dist.), in support of their argument.

{¶ 23} In *Calabrese Law Firm*, we affirmed an attorney-fee provision providing that the losing party would pay the prevailing party's attorney fees. *Id*. at ¶ 58. Appellants suggest that only contractual provisions requiring the losing party to pay attorney fees are enforceable and that contractual provisions that only give one party the right to collect attorney fees are not. However, appellants' argument ignores the fundamental American right to freedom of contract.

> It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom "is as fundamental to our society as the right to write and to speak without restraint." . . . Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts.

*Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36 (1987), quoting *Blount v. Smith*, 12 Ohio St.2d 41, 47 (1967).

{¶ 24} However, the freedom of contract is not absolute. Attorney-fee provisions are not enforceable if (1) the parties do not share an equal bargaining position, (2) the terms of the provision are not freely negotiable, (3) the provision promotes litigation or illegal acts, or (4) when the attorney-fee provision acts as a

penalty. *Professional Solutions Ins. Co. v. Novak, L.L.P.*, 2020-Ohio-4829, ¶ 25 (8th Dist.); *McInnis v. Spin Cycle-Euclid, L.L.C.*, 2009-Ohio-2370, ¶ 19 (8th Dist.).

{¶ 25} There is nothing illegal about the parties' fee-shifting agreement nor does the provision act as a penalty. The provision is obviously intended to cover Pricom's losses in the event appellants fail to pay the contract price and Pricom is forced to retain counsel to collect an unpaid bill, as was the case here.

{¶ 26} The parties also had similar bargaining power. Zipkin has been a licensed attorney in Ohio for several decades and, therefore, has years of education and experience to inform his contractual decisions. Tornstrom is not an attorney, but he is a business owner, and he provided the contract with the fee-shifting provision in his favor. Therefore, the parties had equal bargaining power. Indeed, Zipkin was not apprehensive about negotiating the terms of the contract. He was assertive about scaling back the scope of the work and the price he was willing to pay. The evidence shows that the contract with the attorney-fee provision was freely negotiable, and Zipkin entered the contract knowingly and intelligently.

{¶ 27} Therefore, the fee-shifting provision in the agreement is valid and enforceable, and the second assignment of error is overruled.

### C. Block-Billing

{¶ 28} Appellants nevertheless argue, in the third assignment of error, that the attorney-fee award should be reversed because it was based on improper block billing. They cite *State ex rel. Harris v. Rubino*, 2018-Ohio-5109, in support of their argument that block-billing is per se illegal.

{¶ 29} In *Rubino*, the Ohio Supreme Court reviewed an application for attorney fees in connection with a successful petition for a writ of mandamus. The relators sought to recover a total of $106,172.50 in attorney fees, but the court only awarded $58,655 due, in large part, to counsel's use of block-billing. *Id.* at ¶ 6. It defined block-billing as "lumping multiple tasks into a single time entry." *Id.*, quoting *Tridico v. Dist. of Columbia*, 235 F.Supp.3d 100, 109 (D.D.C. 2017).

{¶ 30} The Court in *Rubin*o explained that the block-billing in that case was problematic because "'there [wa]s simply no . . . way to assess whether the time spent on each of th[e] tasks was reasonable when they are lumped together.'" *Id.*, quoting *Tridico* at 109. As a result, the *Rubino* Court observed that some courts absolutely reject attorney-fee applications containing block-billed entries, while others apply across-the-board cuts to account for time unreasonably billed. *Id.* at ¶ 6, citing *Walker v. Gruver*, 2013 U.S. Dist. LEXIS 158219 (M.D.Pa. Nov. 5, 2013) (collecting cases); *Fulkerson v. Yaskawa Am., Inc.*, 2015 U.S. Dist. LEXIS 144469 (S.D.Ohio Oct. 23, 2015).

{¶ 31} After reviewing the attorney-fee bills in that case, the *Rubino* Court announced that it, the Ohio Supreme Court, would no longer grant attorney-fee applications that include block-billed time entries. *Id.* at ¶ 7. The court warned that future fee applications should contain separate time entries with the time expended on each task denoted in tenths of an hour and that any applications failing to meet these criteria risked "denial in full." *Id.*

{¶ 32} Although the Ohio Supreme Court declared that it would no longer grant attorney-fee applications that include block-billed entries, it did not issue a state-wide ban on block-billing. Indeed, we have held that the *Rubino* decision does not preclude an award of fees based on block-billed entries. *See Christen v. Continental Ents.*, 2020-Ohio-3665, ¶ 46-47 (8th Dist.).

{¶ 33} In *Christen*, a tenant sued his landlord to recover a wrongfully withheld security deposit and attorney fees pursuant to R.C. 5321.16. R.C. 5321.16 outlines security-deposit procedures and provides that tenants may recover reasonable attorney fees incurred in recovering security deposits that have been wrongfully withheld. In support of the tenant's attorney-fee request, the tenant submitted invoices that contained block-billed entries. We cautioned that "the best practice is to submit bills with separate time entries for each task." *Id*. However, we awarded the attorney fees based on the block-billed entries because "any block-billing that occurred in this case would not have prevented the trial court from determining that the time spent in pursuit of the security deposit claim was reasonable." *Id*. at ¶ 47.

{¶ 34} Therefore, because block-billing does not require automatic reversal of an attorney-fee award, we overrule the third assignment of error.

### D. Attorney-Fee Expert

{¶ 35} In the fourth assignment of error, appellants argue the trial court erred in allowing Pricom's attorney-fee expert to testify at the attorney-fee hearing because appellees failed to produce the expert's report and the time entries in

accordance with the trial court's discovery schedule and Loc.R. 21.1. of the Cuyahoga County Court of Common Pleas, General Division ("Loc.R. 21.1.").

{¶ 36} Loc.R. 21.1 governs expert witnesses and provides that expert reports shall be exchanged in accordance with the schedule established by the court. Loc.R. 21.1(A). The rule further provides that unless *good cause* is shown, all supplemental reports must be supplied no later than 30 days prior to trial. Loc.R. 21.1(B). (Emphasis added.)

{¶ 37} We review a trial court's decision on discovery matters, motions in limine, and the admissibility of expert testimony for an abuse of discretion. *180 Degree Solutions L.L.C. v. Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, ¶ 57 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term "abuse of discretion" implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 38} Appellees produced their expert's report two days before the attorney-fee hearing. Therefore, they did not produce the report in accordance with the trial court's discovery schedule, which required production months earlier. However, appellees' attorney-fee claim was contingent on the success of their underlying breach-of-contract claim. It was thus unknown whether an expert report on attorney fees would be required until after the trial court granted appellees' motion

for summary judgment on their counterclaim. Therefore, appellees had good cause for not producing the expert report by the discovery deadline.

{¶ 39} Appellees nevertheless contend they were prejudiced by the late production of the expert report. However, appellees did not seek a continuance of the attorney-fee hearing due to the late production of the expert report nor did they seek leave to obtain their own expert. They also never requested the report despite knowing that a hearing on attorney fees had been scheduled. Therefore, appellees' complaint that they were surprised by the late production of the report is disingenuous.

{¶ 40} Moreover, there is no steadfast rule that the "reasonableness" of an attorney's hours or hourly rate must be established by expert testimony. *Alcorso v. Correll*, 2021-Ohio-3351, ¶ 37 (8th Dist.), citing *Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 7, fn. 2 (8th Dist.) ("While the presentation of testimony from a 'disinterested person' or expert may be the 'better practice' when establishing the reasonableness of attorney fees, it is not required to support a finding that attorney fees are reasonable."); *Cleveland v. CapitalSource Bank*, 2016-Ohio-3172, ¶ 13 (8th Dist.), citing *Joseph G. Stafford & Assocs. v. Skinner*, 1996 Ohio App. LEXIS 4803, 23 (8th Dist. Oct. 31, 1996) (recognizing a line of cases that permits a trial court to determine reasonable attorney fees without independent expert testimony).

{¶ 41} The trial court could have decided the reasonableness of the attorney fees without third-party expert testimony. We, therefore, cannot say that the trial court abused its discretion by allowing the attorney-fee expert to testify under these

circumstances, since appellees' counsel could have provided the same testimony concerning the reasonableness of the fees if the expert had been excluded.

{¶ 42} Having determined that block-billed entries are not per se prohibited and that the trial court's decision to allow appellees' expert to testify was not an abuse of discretion, we now turn to the trial court's determination that appellees' attorney fees were reasonable. We review a trial court's award of attorney fees for abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157, 160 (1995).

{¶ 43} "When ruling on a request for attorney fees, a trial court must determine the 'lodestar,' which is the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked on the litigation." *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855, ¶ 45, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, (1991). "There is a strong presumption that the lodestar amount is the proper amount for an attorney-fee award." *Id.*, citing *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 19. The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 19 (8th Dist.), citing *Nordquist v. Schwartz*, 2012-Ohio-4571, ¶ 22 (7th Dist.).

{¶ 44} In calculating attorney fees, courts consider numerous factors in addition to the lodestar amount. These factors include the time and labor involved in litigation, the novelty and difficulty of the legal questions involved, and the results of the legal services. *Benton Village Condominium Owners' Assn. v. Holdings, JRG*

*Ltd.*, 2008-Ohio-148, ¶ 39 (8th Dist.), citing *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 2008-Ohio-148, ¶ 46 (10th Dist.).

{¶ 45} As previously stated, the trial court awarded appellees' attorney fees pursuant to the attorney-fee provision in the parties' contract. Appellees submitted copies of their attorney's invoices and appellees' expert testified that the billing entries listed in the invoices were reasonable. (Tr. 24.) The invoices were admitted into evidence and the court could see that each billing entry provided a brief description of the legal services rendered and the amounts charged for each service and filing.

{¶ 46} The attorney-fee bills totaled $79,294.80, an amount substantially in excess of the contract price of $22,000. However, appellees' expert testified, and the record itself shows, that appellants employed overly aggressive tactics in prosecuting a relatively minor dispute. The fees would have been significantly less had it not been for appellants' aggressive litigation tactics. Moreover, appellants did not present any evidentiary materials to suggest the award of attorney fees was unreasonable, unnecessary, or unsupported by the evidence. We, therefore, find no abuse of discretion in the trial court's award of attorney fees.

{¶ 47} The fourth assignment of error is overruled.

### F. Architectural Expert Report

{¶ 48} In the fifth assignment of error, appellants argue the trial court erred in granting summary judgment in appellees' favor on their counterclaim for breach of contract. They contend the architectural expert report they submitted in

opposition to appellees' motion for summary judgment created a genuine issue of material fact that precluded summary judgment in appellees' favor.

{¶ 49} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 287 (1996).

{¶ 50} Appellants submitted an expert report from Carpenter in support of their brief in opposition to appellees' motion for summary judgment. In his opinion, appellees' work fell below the standards of asphalt work expected in the industry because they failed to fill cracks before the winter months. Carpenter states that "when cracks in asphalt are not filled before winter, ice and salt expand the cracks, causing potholes." (Appellants' brief p. 27.) Appellants contend the trial court erred

in granting summary judgment in favor of appellees in the face of this expert testimony.[2]

{¶ 51} The trial court did not state its reasons for granting summary judgment in appellees' favor. However, the trial court likely found that appellants' expert report was not admissible as expert evidence because it failed to provide a proper foundation as required by Evid.R. 702. Under Evid.R. 702, a witness may testify as an expert if (1) "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons"; (2) "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony"; and (3) "[t]he witness' testimony is based on reliable scientific, technical, or other specialized information." *Lucsik v. Kosdrosky*, 2017-Ohio-96, ¶ 5 (8th Dist.); *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 53-54 (8th Dist.); Evid.R. 702. These foundational requirements must be established before an expert's testimony may be admitted into and relied upon as evidence. *State v. Gasper*, 2023-Ohio-1500, ¶ 49 (1st Dist.) ("A trial court must ensure that an expert's testimony is based on a reliable foundation and is relevant.").

{¶ 52} Neither Carpenter's report nor his affidavit verifying the report provide any information necessary to establish the foundational requirements for

---

[2] Appellants' argument relates solely to the court's decision to grant summary judgment in favor of appellees on appellants' breach-of-contract claim. Appellants have, therefore, forfeited any argument to the fraud and consumer-sales-practices claims, and we limit our review to the breach-of-contract claim.

the admissibility of expert evidence. Carpenter provided a curriculum vitae. However, the curriculum vitae shows that Carpenter has architectural expertise in residential designs, historic remodeling and restoration, building additions, and landscape structures. Landscape structures may include patios, but the curriculum vitae says nothing about any expertise in asphalt applications. Without a proper foundation demonstrating any expertise in asphalt work, Carpenter's report cannot be considered as expert evidence on that issue.

{¶ 53} Furthermore, even if the report were considered as evidence, it fails to establish that appellants sustained any damages. To establish a prima facie case of breach of contract, a plaintiff must demonstrate actual damages. *Ma v. Gomez*, 2023-Ohio-524, ¶ 104, fn. 10, citing *Corsaro v. ARC Westlake Village, Inc.*, 2005-Ohio-1982, ¶ 20 (8th Dist.), citing *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175 (2d Dist.1991) (breach of contract requires proof of actual damages). And, a greater certainty in the proof of damages is required for breach of contract than in tort. *Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, at ¶ 42; *Robinson v. Turoczy Bonding Co.*, 2016-Ohio-7397, ¶ 37 (8th Dist.); *Rhodes v. Rhodes Industries, Inc.*, 71 Ohio App.3d 797, 808-809 (8th Dist.1991).

{¶ 54} Alleging that appellants were damaged by American Asphalt's work, appellants argued:

> Because American Asphalt did not fill the cracks, the cracks remained open during the winter of 2019, allowing water to fill the cracks, freeze, and "expand and push the asphalt material apart, causing deterioration on the surface."

(Appellants' brief in opposition to motion for summary judgment p. 2.) Carpenter notes in his report that American Asphalt "may have given an estimate for crack sealing and recommended they not do that because they're in such poor shape." He also notes that "seal coating in the absence of crack filling is at best cosmetic." He explains that "[w]ater is a particular issue for pavement" because "[i]f water gets under your pavement and freezes, it will expand and push the asphalt material apart, causing deterioration of the surface." And he states that "[r]egular sealing can help to prevent water damage."

{¶ 55} Carpenter describes potential problems that can result from the failure to fill cracks when sealcoating a road or driveway. However, he never states that any of these problems actually occurred at any of appellants' properties. Carpenter asserts that appellees "changed the pitch" at one property, "causing water to be held within the driveway entryway and freezing when temperatures drop." However, he fails to explain how the change in pitch actually damaged the property. He provides no details regarding the degree or size of the pitch nor does he explain what is needed to fix it, if anything. The report, therefore, fails to provide evidence of actual damages, a necessary element of a breach-of-contract claim. Therefore, even if the trial court considered the architect's report, it properly concluded that appellants failed to establish damages for the alleged breach of contract and granted summary judgment in appellees' favor.

{¶ 56} The fifth assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHAEL JOHN RYAN, J., CONCUR