[Cite as *Alcorso v. Correll*, 2021-Ohio-3351.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|                        |   |              |
|------------------------|---|--------------|
| STACY ALCORSO,         | : |              |
| Plaintiff-Appellee,    | : | No. 110218   |
| v.                     | : |              |
| JASON B. CORRELL,      | : |              |
| Defendant-Appellant.   | : |              |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 23, 2021

Civil Appeal from the Rocky River Municipal Court
Case No. 17 CVF 2706

## *Appearances:*

Ali Mustafa, *for appellee.*

Law Offices of Brent L. English and Brent L. English, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Jason Correll appeals from an order of the Rocky River Municipal Court ordering him to pay plaintiff-appellee Stacy Alcorso[1]

---

[1] We note that there are two different spellings of appellee's last name in the record — "Alcorso" and "Alcoroso." Because appellee used "Alcorso" in her appellate brief filed in this this appeal, we use that spelling here.

$26,825 in attorney fees taxed as costs, following a landlord-tenant dispute in which Correll failed to return a portion of Alcorso's security deposit. Correll contends that he was denied due process because he did not receive notice of the "trial" scheduled to determine the amount and reasonableness of Alcorso's attorney fees and that the trial court abused its discretion by awarding "excessive" attorney fees.

{¶ 2} For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3} Alcorso rented a home in Fairview Park, Ohio from Correll. Pursuant to a written lease agreement, Alcorso paid Correll a $1,200 security deposit. At the end of the lease term, Alcorso vacated the premises. Correll refused to return her full security deposit, claiming that she had damaged the premises.

**Fee Agreement**

{¶ 4} On August 21, 2017, Alcorso entered into a "civil flat fee agreement" with Attorney Ali Mustafa to represent her in connection with her efforts to recover her security deposit (the "fee agreement"). Although the fee agreement was labeled a "flat fee agreement," it was not, in fact, a flat fee agreement. The fee agreement provided in relevant part:

> 2. Because of the specific nature of this matter, attorney is in a position to quote a fee for its professional services billable by the hour.

> 3. Attorney's fee for representing client in this matter shall be $250 per hour. This will acknowledge receipt of $350.00 as a retainer, which is to be applied towards the total fee. If the case proceeds to trial, attorney's fee shall be an additional $1,500.00 per day. In all cases. attorney's fee shall be paid in full by the date of the final disposition of the case.

* * *

5.   Invoices for legal services rendered and costs advanced or incurred may be issued monthly and are payable upon receipt.  Interest at the rate of 1.5 percent per month will be added to the balance due on amounts which remain unpaid sixty (60) days or more.

**Litigation Commences**

{¶ 5}   On December 26, 2017, Alcorso filed a complaint in the Rocky River Municipal Court, seeking the return of her $1,200 security deposit, double damages and attorney fees, pursuant to R.C. 5321.16.  On May 31, 2019, Correll was granted leave to file a counterclaim seeking $4,000 for additional damages to the premises, plus attorney fees, litigation expenses and costs.  Following discovery, a mediation, summary judgment filings and multiple conferences and continuances, a two-day jury trial was held on July 15, 2019.  The jury found in favor of Alcorso and against Correll on Alcorso's claim, awarding her $446.19 in damages.  The jury also found in favor of Alcorso on Correll's counterclaim.

{¶ 6}   On August 6, 2019, Alcorso filed a motion to tax costs and a motion for attorney fees.  Alcorso sought to recover $1,143.06 in costs (for fees paid to the court reporter for attendance at Correll's deposition, Correll's deposition transcript and fees paid to an expert witness) and $11,150 in attorney fees (for 44.6 hours of attorney time at a rate of $250 per hour through July 31, 2016).  In support of her motion for attorney fees, Alcorso submitted an affidavit (the "initial affidavit") and "time sheet" from her attorney, Ali Mustafa.  In his affidavit, Attorney Mustafa averred that he had been admitted to the practice of law in Ohio in 2014, that he has

"experience in residential landlord and tenant litigation," that he has "personal knowledge of asserting similar claims under similar circumstances" and that he was "familiar with the hourly rates charged by local practitioners in North East [sic] Ohio and the time incurred in prosecuting and defending residential litigation proceedings." Attorney Mustafa further averred that $250 was a "reasonabl[e] hourly rate for legal services provided on residential litigation in North East [sic] Ohio," that "44.6 hours is a reasonable amount of time to research, review, and produce the documents, pleadings, arguments and time spent during [d]eposition and [t]rial, that were germane to this proceeding and presented to the Court" and that the work performed was "reasonable and necessary for the proper representation" of Alcorso. Attorney Mustafa also averred that "[b]ecause [his] time spent on this file well exceed[ed] the expected time in the ordinary course of similar litigation," he had "only included the time spent in [d]rafting, researching, review, production of documents and pleadings, and the time spent in the depositions and [t]rial" in the fee request. Attorney Mustafa's itemized "time sheet" listed the date, time spent and a general description of each of the tasks performed. These items were also set forth in a chart included in Attorney Mustafa's affidavit. Correll did not file an opposition to Alcorso's motion to tax costs or her motion for attorney fees.

{¶ 7} Following a hearing on the motions, on September 23, 2019, the trial court issued a journal entry denying the motion for attorney fees because the matter had been submitted to the jury. The trial court also denied the motion to tax costs

but noted that Alcorso had been previously awarded $525 in court costs in the trial court's July 23, 2019 journal entry setting forth the jury's verdict.

**The Initial Appeal**

{¶ 8} Alcorso appealed, arguing that the trial court's judgment was against the manifest weight of the evidence, that the trial court had abused its discretion in refusing to tax her attorney fees and litigation expenses as costs and that the trial court had erred in failing to award her statutory double damages. This court affirmed the trial court's judgment in part and reversed it in part. This court affirmed the trial court's denial of Alcorso's motion to tax her expert witness fee and deposition expenses as costs but held that the trial court had erred in failing to award her double damages and reasonable attorney fees pursuant to R.C. 5321.16(C). The court remanded the matter to the trial court to impose statutory double damages and to tax reasonable attorney fees as costs. *Alcoroso v. Correll*, 2020-Ohio-4752, 159 N.E.3d 924 (8th Dist.) ("*Alcoroso I*").

**Notice of Hearing on Attorney Fees**

{¶ 9} After the case was remanded, on October 16, 2020, the trial court issued a notice of trial assignment setting an "oral hearing" for November 18, 2020. Both Attorney Mustafa and Correll's counsel were listed as "ccs." on the notice of trial assignment. The notice stated in bold, underlined, all-caps type that "ATTORNEY MUST NOTIFY DEFENDANT OF ALL COURT DATES, AS DEFENDANT WILL NOT RECEIVE NOTIFICATION FROM THE COURT." The

trial court's docket indicates that on October 16, 2020, copies of the notice of trial assignment were sent "to all parties involved."

{¶ 10} When neither Correll nor his counsel appeared for the November 18, 2020 hearing, the trial court attempted to contact Correll's counsel. The trial court stated:

> We got in contact with [Correll's counsel's] office. We first — his office advised that he didn't receive notice, but there was an email notice that went to his office.
>
> And I inquired whether he'd be able to get out here today and he cannot. And there's other issues that were not — I'm not going to go into the record on relative to [Correll's counsel] and his availability.

{¶ 11} Correll did not move for a continuance. The trial court indicated that the hearing would proceed as scheduled.

**Hearing on Attorney Fees**

{¶ 12} At the November 18, 2020 hearing, Alcorso sought, in addition to the $11,150 attorney fees she had previously requested (1) an additional $3,000 for two days of trial pursuant to the fee agreement and (2) an additional $16,025 in attorney fees related to work Attorney Mustafa had performed in connection with the appeal in *Alcoroso I* and in preparation for the hearing on attorney fees.

{¶ 13} Attorney Mustafa and Attorney Christopher Mulvaney testified at the hearing. In addition, Alcorso presented three exhibits at the hearing: (1) an undated, unnotarized copy of a document purporting to be an affidavit executed by Attorney Mustafa relating to work performed from May 14, 2018 through July 31,

2019 (Exhibit A),[2] an affidavit executed by Attorney Mustafa dated November 17, 2020, relating to work performed from September 23, 2019 and November 15, 2020 (Exhibit B) and (3) a copy of the fee agreement between Alcorso and Attorney Mustafa (Exhibit C).[3]

{¶ 14} Attorney Mulvaney testified that he has been licensed to practice since 2010 and that his practice involves "[p]rimarily real estate law" with a "strong focus" on landlord/tenant law. He indicated that $250 is a reasonable hourly rate to represent a landlord or a tenant "in a case such as this" in Rocky River, Ohio. Attorney Mulvaney testified that he was familiar with Attorney Mustafa's work in landlord/tenant cases, that Attorney Mustafa was opposing counsel in a matter pending in the Lorain County Court of Common Pleas and that Attorney Mustafa's skill level merited a $250 hourly rate. Attorney Mulvaney discussed the requirements of R.C. 5321.16. He explained that the purpose of the mandatory

---

[2] We note that several of the dates listed on Attorney Mustafa's initial affidavit and Exhibit A do not appear to line up with the municipal court's docket. For example, in his affidavit, Attorney Mustafa lists .5 hours to "[d]raft [c]omplaint for [s]ecurity [d]eposit" on August 22, 2018. However, the complaint in this case was filed on December 26, 2017. It may be that this is simply a typographical error, particularly given that the fee agreement was executed on August 21, 2017. However, because this issue was not raised below and because Attorney Mustafa clearly drafted a complaint in this case, albeit likely not on August 22, 2018, it does not change the result here.

[3] Although the copy of Exhibit A presented at the hearing was unnotarized, it was similar to the initial affidavit submitted with Alcorso's motion for attorney fees, which was notarized. The difference between the initial affidavit and Exhibit A is that in Exhibit A, Attorney Mustafa sought to recover, in addition to his hourly rate for trial, $1,500 per trial day as a "trial expense." Although the transcript does not reflect that the exhibits were admitted into evidence, the trial court expressly referenced the "affidavits and exhibits" — and its review of and reliance upon them — in its November 19, 2020 judgment entry.

double damages and attorney fees provisions in R.C. 5321.16 is to "level the playing field" between tenants, who are commonly unrepresented by counsel, and landlords, who are commonly represented by counsel, and "to incentivize counsel to represent tenants in a security deposit case" because "to charge a tenant an hourly rate to fight on their behalf for a security deposit * * * simply does not make sense for anybody."

{¶ 15} Attorney Mulvaney testified that he had reviewed the municipal court and appellate court dockets, the documents filed by the parties in the trial court and on appeal and the affidavits prepared by Attorney Mustafa. He stated that he also spoke with Attorney Mustafa regarding the litigation. Attorney Mulvaney indicated that Correll's counsel rejected early efforts by Attorney Mustafa to resolve the case and that many of the fees generated resulted from work that Correll's counsel "forced" Attorney Mustafa to undertake.

{¶ 16} Attorney Mulvaney testified that he had never handled an appeal of a residential landlord/tenant case because "it's very rarely worthwhile" to appeal such a case but that he had previously handled appeals in other types of matters. He indicated that "there was a lot more activity" in the appeal in this case than he would "typically expect." He testified that he had reviewed the briefs and other filings in *Alcoroso I* and that he found the time spent by Attorney Mustafa in connection with both the trial court proceedings and on appeal, including the time spent preparing for the Zoom oral argument, to be reasonable.

{¶ 17} Attorney Mustafa testified that he has been licensed to practice in Ohio since 2014, that he had previously clerked for an appellate judge and that his

practice started in landlord/tenant property law but later expanded into commercial and transactional areas, "primarily property and business." Attorney Mustafa testified regarding the terms of his fee agreement with Alcorso, confirmed that his agreed hourly rate was $250 and stated that Alcorso had paid a $350 retainer "to cover the fees of filing and starting this process for her" but that he had not issued any bills for his services and Alcorso had not otherwise paid any other sums toward his fees.

{¶ 18} Attorney Mustafa explained the course of the litigation in the case and the "heavy load" he performed leading up to the trial, including presuit correspondence, the filing of the complaint, participation in multiple mediations and pretrials (many of which were "cancelled last minute or continued last minute"), responding to motions for continuances, defending against Correll's summary judgment motion and counterclaim (which Attorney Mustafa claimed was filed in "retaliation" for Alcorso's refusal to dismiss her complaint) and preparing for, and participating in, the jury trial (which Correll had requested).

{¶ 19} Attorney Mustafa stated that on appeal, in addition to performing the "normal" tasks required on appeal, e.g., filing a notice of appeal, drafting appellate briefs and preparing for and attending oral argument, he was required to respond to numerous motions filed by Correll, including a motion to dismiss the appeal.

{¶ 20} Attorney Mustafa testified that the affidavits he submitted set forth work he had performed in the case and that, as a solo practitioner, he performed all of the work in the case personally and he believed that the time spent and fees

charged were reasonable, customary and consistent with the considerations set forth in Prof.Cond.R. 1.5. Attorney Mustafa discussed the requirements and purpose of R.C. 5321.16 and claimed that this was not the usual landlord/tenant case. As he described it:

> It's just a matter of my ability to keep up. * * * I was in the place where I'm combatting an attorney who is * * * I want to call him a turret with a big gun on it. It's just going to keep coming at you and you have to keep — keep fighting it.

{¶ 21} Attorney Mustafa stated that he was requesting $1,500 a day as a "trial expense" plus his hourly rate for the two days of trial because (1) it was included the fee agreement and (2) when he schedules a day for trial, he "expect[s] * * * to possibly close off that whole day for a trial" and that he, therefore, does not "take anything for anyone else that day." Attorney Mustafa stated that he did not expect a seven or ten-hour trial day when he included the $1,500 per day trial add-on in the fee agreement.

{¶ 22} Attorney Mulvaney testified that although Attorney Mustafa believed that he was entitled to both his $250 hourly rate and $1,500 per day as a trial expense for the days he was in trial, he believed Attorney Mustafa was reasonably entitled to either (1) his hourly rate for the time spent in trial or (2) $1,500 per day during the two days he spent in trial.

**The Trial Court's Decision on Attorney Fees**

{¶ 23} On November 19, 2020, the trial court issued a written journal entry setting forth its decision on remand as follows:

This matter came on for review upon the remand from the Court of Appeals of Ohio, Eighth Appellate District, Cuyahoga County to impose an award of double damages and reasonable attorney fees.

A jury previously rendered a verdict in favor of the Plaintiff in the amount $446.19. Said amount shall now be doubled and the award for the Plaintiff in this matter shall be $892.38.

Further, upon review of the affidavits and exhibits, the Court finds that the hours expended for litigation on the trial level (44.6 hours) and on the appellate level (64.1 hours) were reasonable and that the rate charged in the amount of $250 per hour was reasonable and therefore awards the Plaintiff attorney fees in the amount of $27,175.00. Per the Civil Flat Fee Agreement of counsel, the receipt of the sum of $350.00 was acknowledged and was applied towards the total fee. Therefore[,] the amount awarded to the Plaintiff for attorney fees shall be $26,825.00 and shall be taxed as costs.[4]

{¶ 24} Correll appealed, raising the following two assignments of error for review:

Assignment of Error 1: The trial court violated Appellant's right of due process by not notifying him of a trial regarding the reasonableness and amount of attorney's fees after a remand from this Court.

Assignment of Error 2: The trial court erred and abused its discretion by awarding Appellee $26,825.00 in attorney's fees on a $45.87 judgment regarding a security deposit where the evidence showed the amount was grossly excessive and unnecessary.

{¶ 25} On April 5, 2021, Correll filed a "motion to relinquish jurisdiction for 60 days and to remand this case to the Rocky River Municipal Court for consideration of appellant's motion for relief from judgment," attaching a copy of a motion for relief from judgment he had filed that same day in the Rocky River

---

[4] It is unclear from the record why the trial court deducted the $350 retainer Alcorso paid to Attorney Mustafa from the attorney fees awarded to Alcorso. There is no dispute that she paid that sum to Attorney Mustafa as a retainer. However, because no one has raised the issue, we do not address it further here.

Municipal Court. On April 13, 2021, this court denied the motion to relinquish jurisdiction, explaining: "Appellant did not file his Civ.R. 60(B) motion until April 5, 2021, the same date his appellant's brief was filed. Appellant's request to remand the appeal for 60 days would unduly extend the time the case remains pending on appeal. This court's mandate is to hear cases in a timely fashion."

**Law and Analysis**

### Lack of Notice of the Hearing on Attorney Fees

{¶ 26} In his first assignment of error, Correll argues that he was denied due process because he did not receive actual or constructive notice of the hearing on attorney fees. He further contends that the trial court erred (1) in awarding Alcorso appellate attorney fees because she did not file a motion requesting such fees in violation of Rule 1.12 of the Rocky River Municipal Court Rules of Practice and Procedures ("Loc.R. 1.12")[5] and (2) in permitting an expert to testify at the attorney fee hearing in support of Alcorso's claim for attorney fees without providing an expert report to Correll.

{¶ 27} Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution, parties are entitled to reasonable notice of judicial proceedings and a reasonable

---

[5] In his appellate brief, Correll refers to "Rocky River Municipal Court Local Rule 11" but quotes Loc.R. 1.12. There is no Rule 11 in the current version of the Rocky River Municipal Court Rules of Practice and Procedures (Rev. 05/01/2017), which is available on the court's website. Loc.R. 1.12 governs motions. It states: "All motions shall be in writing and timely filed and served on all appropriate parties in accordance with Ohio Rules and Statutes. At the discretion of the court or as required by law, motions may be set for oral hearing."

opportunity to be heard. *Ohio Valley Radiology Assocs., Inc., v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 125, 502 N.E.2d 599 (1986). "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

{¶ 28} "Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact." *Ohio Valley Radiology* at 124; *Cobblestone Square II Co. v. L&B Food Servs.*, 8th Dist. Cuyahoga No. 95968, 2011-Ohio-4817, ¶ 16-17; *see also Rizzo-Lortz v. Erie Ins. Group*, 10th Dist. Franklin No. 17AP-623, 2019-Ohio-2133, ¶ 13 (Although due process "demands that litigants receive some form of reasonable notice of hearings," the notice "need not be actual notice," and "[i]n the absence of a court rule mandating that actual notice occur, "'due process is satisfied where the trial court sets a case down on its docket for hearing, since the parties or their attorneys are expected to keep themselves advised of the progress of their cases.'""), quoting *Yoder v. Thorpe*, 10th Dist. Franklin No. 07AP-225, 2007-Ohio-5866, ¶ 13, quoting *Metcalf v. Ohio State Univ. Hosp.*, 2 Ohio App.3d 166, 168, 441 N.E.2d 299 (10th Dist.1981).

**{¶ 29}** Furthermore, where the court provides notice to the parties in a proceeding, "'[n]otice shall be deemed to have been provided once the clerk has served notice of the entry and made the appropriate notation on the docket.'" *Foster v. Benson*, 8th Dist. Cuyahoga No. 107366, 2019-Ohio-1528, ¶ 28, quoting *Martin v. Manning*, 8th Dist. Cuyahoga No. 62039, 1991 Ohio App. LEXIS 5763, 1-2 (Dec. 5, 1991), citing *Atkinson v. Grumman Ohio Corp.*, 37 Ohio St.3d 80, 523 N.E.2d 851 (1988), paragraph four of syllabus. "'[N]otice to an attorney may be imputed to the client.'" *Foster* at ¶ 28, quoting *State v. Hysell*, 4th Dist. Meigs No. 95 A 4, 1995 Ohio App. LEXIS 4408, 7 (Sept. 27, 1995). "'[A] party's self-serving statement that he did not receive service is generally insufficient to rebut the presumption of service.'" *Foster* at ¶ 30 (where docket reflected that plaintiffs and/or their attorney were provided notice of hearing, the court presumed that service was proper), quoting *Castanias v. Castanias*, 12th Dist. Warren No. CA2009-11-152, 2010-Ohio-4300, ¶ 11; *see also State ex rel. Ormond v. Solon*, 8th Dist. Cuyahoga No. 82553, 2003-Ohio-5654, ¶ 8 ("Although the docket notation is not conclusive evidence that service was made, a reviewing court shall presume regularity absent any evidence to the contrary."), citing *Winters v. Doe*, 8th Dist. Cuyahoga No. 74384, 1998 Ohio App. LEXIS 4221 (Sept. 10, 1998).

**{¶ 30}** Correll has not shown that he was denied due process with respect to notice of the hearing on attorney fees. Correll does not dispute that he timely received this court's decision in *Alcoroso I*. There is nothing in the record before us to support Correll's claim that neither he nor his counsel received the trial court's

October 16, 2020 notice of trial assignment or that they otherwise had no actual or constructive notice of the November 18, 2020 hearing date on the attorney fee issue.[6] Both the trial court's docket and the October 16, 2020 notice of trial assignment indicate that Correll's counsel was served with the notice on October 16, 2020. Although Correll asserts that if he or Correll had "checked the Rocky River Municipal Court via the Internet, they would not have seen when the trial would be held," the record reflects otherwise. The trial court's docket contains two entries related to the hearing on attorney fees, both of which are dated October 16, 2020. The first states:

Trial Assignment issued; copies to all parties involved

Civil Trial Assignment (F)
Sent on: 10/16/2020  12:17:32.20

The second states:

Hearing Scheduled:
Event: Oral Hearing
Date: 11/18/2020  Time: 10:00 am
Judge: Hagan, Brian F.  Location: Courtroom 3

Accordingly, the trial court's electronic docket did, in fact, identify the date and time of the hearing on attorney fees more than a month before the hearing date.

{¶ 31} Furthermore, when Correll's attorney did not appear for the hearing, the trial court contacted his office, inquiring about his absence. Correll's attorney did not request a continuance after being contacted by the trial court. And although

---

[6] In support of his arguments, Correll cites his motion for relief from judgment filed on April 5, 2021. However, that motion is not part of the trial court record currently before us.

Correll acknowledged receiving the trial court's judgment entry on November 19, 2020 — the day after the hearing — he did not take any action with respect to the trial court's attorney fee award before he filed his notice of appeal. Correll's motion for relief from judgment was not filed until April 5, 2021 — more than four-and-one-half months after the trial court's November 19, 2020 judgment entry.

{¶ 32} With respect to Correll's arguments that the trial court erred in awarding Alcorso appellate attorney fees where she did not file a motion requesting such fees and in permitting an expert to testify at the attorney fee hearing in support of Alcorso's claim for attorney fees without providing an expert report to Correll, Correll did not raise these issues below. As such, he has forfeited appellate review of all but plain error.

{¶ 33} "Plain errors are errors in the judicial process that are clearly apparent on the face of the record and are prejudicial to the appellant.'" *Wells Fargo Bank, N.A. v. Lundeen*, 8th Dist. Cuyahoga No. 107184, 2020-Ohio-28, ¶ 12, quoting *Macintosh Farms Community Assn., Inc. v. Baker*, 8th Dist. Cuyahoga No. 102820, 2015-Ohio-5263, ¶ 8. In civil cases, review for plain error is to be conducted "with the utmost caution." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Plain error is limited to those "extremely rare cases" in which "exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* Plain error exists only where the error "seriously affects the basic fairness,

integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* at 122-123. "The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." *Id.* at 122.

{¶ 34} Correll, however, does not argue the existence of plain error on appeal. As a general matter, this court will not sua sponte craft a plain error argument for an appellant who fails to do so. *See, e.g., O'Donnell v. N.E. Ohio Neighborhood Health Servs.*, 8th Dist. Cuyahoga No. 108541, 2020-Ohio-1609, ¶ 87 ("We need not, sua sponte, consider a claim of plain error that the appellant has not argued on appeal."), citing *K.L. v. D.M.*, 9th Dist. Medina No. 15CA0010-M, 2016-Ohio-338, ¶ 5 (noting that appellate court would not "engage in an analysis of plain error if an appellant fails to argue plain error on appeal"); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (declining to sua sponte "fashion" a plain error argument "and then address it").

{¶ 35} Even if we were to consider the issue, we would find no plain error here. This court expressly noted in *Alcoroso I* that the trial court had the authority under R.C. 5321.16(C) to tax as costs the attorney fees incurred at the appellate level:

> It should be noted that a trial court has the authority under R.C. 5321.16(C) to tax as costs the attorney fees incurred at the appellate level. *Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, ¶ 13. On remand, the trial court '"can easily determine, either in a hearing or by reviewing affidavits, the reasonableness of fees

to be awarded. The trial court, having final authority to assess costs, is in the best position to make such an award.'" *Id.* at ¶ 14, quoting *Breault v. Williamsburg Estates*, 6th Dist. Lucas No. L-86-116, 1986 Ohio App. LEXIS 9152, 12 (Nov. 21, 1986).

*Alcoroso*, 2020-Ohio-4752, 159 N.E.3d 924, at ¶ 39, fn.3.

{¶ 36} This court remanded the matter to the trial court to determine Alcorso's reasonable attorney fees and tax them as costs pursuant to R.C. 5321.16(C). Accordingly, there was no need for Alcorso to file an additional motion for attorney fees on remand. Correll does not dispute that a tenant has a right, under R.C. 5321.16(C), to recover reasonable attorney fees for appellate work performed in connection with a security deposit claim

{¶ 37} Further, even assuming Alcorso should have provided prior notice to Correll (via an "expert report" or otherwise) that she would be calling Attorney Mulvaney to testify at the hearing on attorney fees, there is nothing in the record to suggest that Attorney Mulvaney's testimony was prejudicial to Correll. The trial court did not specifically reference Attorney Mulvaney's testimony as a basis for its attorney fee award and, as detailed above, Attorney Mulvaney's testimony regarding the reasonableness of Alcorso's requested attorney fees was largely duplicative of Attorney Mustafa's own testimony. While the presentation of testimony from a "disinterested person" or expert may be the "better practice" when establishing the reasonableness of attorney fees, it is not required to support a finding that attorney fees are reasonable. *Bales v. Forest River, Inc.*, 8th Dist. Cuyahoga No. 107896, 2019-Ohio-4160, ¶ 7, fn. 2, citing *Grove v. Gamma Ctr.*, 3d Dist. Marion No. 9-12-

41, 2013-Ohio-1734, ¶ 31; *see also Cleveland v. CapitalSource Bank*, 8th Dist. Cuyahoga No. 103231, 2016-Ohio-3172, ¶ 13 ("[I]n Ohio there is no steadfast rule that the 'reasonableness' of attorney fees must be proved by expert testimony. * * * [E]vidence of reasonableness 'may take the form of testimony, affidavits, answers or other forms of sworn evidence. As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed absent an abuse of discretion.'"), quoting *R.C.H. Co. v. 3-J Machining Serv.*, 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57, ¶ 25. Accordingly, we overrule Correll's first assignment of error.

### Reasonableness of Attorney Fees

{¶ 38} In his second assignment of error, Correll incorporates his argument in his first assignment of error and further contends that the trial court abused its discretion in taxing $26,825 in attorney fees as costs because (1) the attorney fees awarded were "excessive and unjustified based upon the evidence presented to the trial court on November 18, 2020" and (2) the attorney fees awarded "relate to matters other that the return of a security deposit" and are, therefore, "not recoverable under the law." Correll requests that we reverse the trial court's judgment and remand the matter for "an actual evidentiary hearing on the request for attorney's fees" "at which it can be demonstrated what portion of [Attorney] Mustafa's claimed fees are related to defense of the counterclaim as opposed to recovery of the allegedly wrongfully withheld security deposit."

{¶ 39} In *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), the Ohio Supreme Court set forth a two-part test for determining what constitutes "reasonable" attorney fees. First, the trial court multiplies the number of hours reasonably expended by the attorney by a reasonable hourly rate. *Id.* at 145. This calculation provides "an initial estimate of the value of the lawyers' services." *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 106, ¶ 3. The trial court may then adjust the fee upward or downward based on the factors listed in Prof.Cond.R. 1.5(a). *Harris* at ¶ 3, citing *Bittner* at syllabus. These factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

> (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a).

{¶ 40} The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *See, e.g., Bales*, 2019-Ohio-4160, at ¶ 19; *Nordquist v. Schwartz*, 7th Dist. Columbiana No. 11 CO 21, 2012-Ohio-4571, ¶ 22 ("The requesting party bears the burden of proving evidence of any hours worked that would be properly billed to the client, proving the attorney's hourly rate, and demonstrating that the rate is reasonable."), citing *Unick v. Pro-Cision, Inc.*, 7th Dist. Mahoning No. 09MA171, 2011-Ohio-1342, ¶ 28-29.

{¶ 41} Although consideration of the Prof.Cond.R. 1.5(a) factors is often described as the "second part" of the *Bittner* attorney-fee-calculation process, in reality, the two steps "overlap * * * because several of the reasonableness factors are often subsumed within the initial lodestar calculation and normally will not provide an independent basis for adjusting the fee award." *Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, ¶ 14 (10th Dist.); *see also Harris* at ¶ 12 (where the relevant Prof.Cond.R. 1.5(a) factors were "subsumed within [the court's] initial calculation," the court declined to "further adjust the award based on those factors"). This is because "nearly all of [the Prof.Cond.R. 1.5(a)] factors are included as part of the hourly fee used to calculate the lodestar," *Phoenix Lighting Group, L.L.C., v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 16, and when calculating the initial "lodestar" amount, the trial court should exclude any time the attorney "unreasonably expended," i.e., attorney time that is duplicative, unnecessary or excessive given the tasks performed. *See, e.g., Bales* at ¶ 20; *Pack v. Hilock Auto Sales*, 10th Dist. Franklin

No. 12AP-48, 2012-Ohio-4076, ¶ 17-18. "The trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *Bittner*, 58 Ohio St.3d at 146, 569 N.E.2d 464. There is a strong presumption that the reasonable hourly rate multiplied by the reasonable number of hours worked is the proper amount for an attorney-fee award. *Phoenix Lighting Group* at ¶ 19.[7]

{¶ 42} Correll contends that the attorney fees awarded by the trial court were excessive because (1) the attorney fees awarded were disproportionate to the "negligible" amount recovered by Alcorso as damages; (2) the fees awarded were "not solely attributable" to Alcorso's security deposit claim but included fees related to the defense of Correll's counterclaim and (3) the attorney fees awarded included "grossly excessive" amounts of time spent on various tasks in connection with both the trial and the initial appeal in *Alcoroso I*.

{¶ 43} We generally review a trial court's decision regarding the reasonableness and amount of attorney fees for abuse of discretion. *Bales* at ¶ 21, citing *Bittner* at 146. A trial court abuses its discretion where its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A decision is unreasonable if there is no sound

---

[7] In *Phoenix Lighting Group*, the Ohio Supreme Court modified *Bittner* "to the extent that it could be viewed as allowing enhancements to the lodestar as a matter of course" and held that "[e]nhancements to the lodestar should be granted rarely" and are appropriate only "when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation." *Phoenix Lighting Group* at ¶ 2, 20 and paragraph one of the syllabus. That modification is not at issue here.

reasoning process that would support that decision." *AAAA Ents. Inc. v. River Place Community Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *see also Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9 ("'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason."). A trial court also abuses its discretion when "the amount of fees determined is so high or so low as to shock the conscience." *Bittner* at 146.

{¶ 44} In this case, however, Correll raised no objection to the amount or reasonableness of Alcorso's requested attorney fees below. He did not file an opposition to Alcorso's motion for attorney fees and did not appear at the November 18, 2020 hearing on attorney fees. Absent plain error, a party who failed to object below cannot now raise an objection for the first time on appeal. As such, Correll has, once again, forfeited appellate review of all but plain error.

{¶ 45} Once again, Correll has not argued the existence of plain error on appeal. Even if, however, we were to review the trial court's decision for plain error, we would find no plain error here.

**Fees Related to Defense of Correll's Counterclaim**

{¶ 46} The purpose of awarding a tenant attorney fees under R.C. 5321.16(C) is "to ensure the return of wrongfully withheld security deposits at no cost to tenants." *Christe v. GMS Mgt. Co.*, 88 Ohio St.3d 376, 378, 726 N.E.2d 497 (2000). To that end, attorney fees taxed as costs under R.C. 5321.16(C) may include not only attorney fees incurred at the trial court level to recover a tenant's security deposit,

but also attorney fees incurred at the appellate level and attorney fees incurred in establishing entitlement to attorney fees under R.C. 5321.16(C). *See, e.g., Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, at ¶ 13; *Christen v. Continental Ent.*, 2020-Ohio-3665, 154 N.E.3d 1192, ¶ 51 (8th Dist.).

{¶ 47} Although the award of attorney fees under R.C. 5321.16(C) "must relate solely to the fees attributable to the tenant's security deposit claim under R.C. 5321.16, and not to any additional claims," *Smith v. Padgett*, 32 Ohio St.3d 344, 349, 513 N.E.2d 737 (1987), it is well established that "a tenant may recover reasonable attorney fees under R.C. 5321.16(C) attributable to both the security deposit claim and to defending against the landlord's claim for alleged damages," where "the two claims are virtually indivisible." *Alcoroso*, 2020-Ohio-4752, 159 N.E.3d 924, at ¶ 39, fn. 3, quoting *Whitestone Co. v. Stittsworth*, 10th Dist. Franklin No. 06AP-371, 2007-Ohio-233, ¶ 56; *see also Christen* at ¶ 40 ("'[C]ourts have awarded attorney fees that relate to both the security deposit claim and to defending against a landlord's counterclaim for alleged damages and/or unpaid rent when such claims are virtually indivisible.'"), quoting *Lloyd v. Roosevelt Properties*, 8th Dist. Cuyahoga No. 105721, 2018-Ohio-3163, ¶ 41; *Clarke v. Royal*, 10th Dist. Franklin No. 20AP-366, 2021-Ohio-2005, ¶ 18-19; *Jerels v. Begue*, 9th Dist. Summit No. 24700, 2010-Ohio-1964, ¶ 13-14. As this court explained in *Buck v. Georgian Manor Invests.*, 8th Dist. Cuyahoga No. 67170, 1995 Ohio App. LEXIS 1254 (Mar. 30, 1995):

"We do not adhere to defendant's argument that attorney fees are not recoverable when arising out of a landlord's counterclaim against the tenant. Such a holding would subvert the intent of R.C. Chapter 5321, commonly known as the Ohio Landlord-Tenant Act. In order for the tenant to benefit from his claim, he must necessarily rebut the allegations of the landlord's counterclaim, thus making the two actions virtually indivisible. To prohibit the recovery of attorney fees expended in the defense of a landlord's counterclaim would effectively nullify the legislative intent of providing a means of redress to wronged tenants.

*Id.* at 12-13, quoting *Opsomer v. Gray*, 3d Dist. Henry No. 7-84-20, 1986 Ohio App. LEXIS 7067, 10-11 (May 28, 1986).

{¶ 48} Correll's counterclaim was for "damages" allegedly incurred "as a result of Alcorso's tenancy (over and above ordinary wear and tear)" — the same reason Correll gave for failing to return Alcorso's full security deposit. The parties' claims, therefore, overlapped because they were arguing, at least in part, over the same sum of money. Unless there was property damage, Alcorso was entitled to the return of her full security deposit; if Correll prevailed on his counterclaim, Alcorso could not have prevailed on her security deposit claim. As such, the trial court could have reasonably found that the two claims were "virtually indivisible" and, in its discretion, awarded attorney fees to Alcorso without distinguishing between the fees attributable to Alcorso's security deposit claim and the fees attributable to Correll's counterclaim.

**Disproportionate Attorney Fees to Damages Recovered**

{¶ 49} Simply because the attorney fees incurred in this case were greatly disproportionate to the damages recovered on Alcorso's security deposit claim does not mean they were unreasonable. As stated above, R.C. 5321.16 is a remedial

statute intended to ensure that a tenant incurs no expense when seeking a refund of a wrongfully withheld security deposit. Consistent with that purpose, Alcorso was entitled to recover the reasonable attorney fees Correll's actions forced her to incur to enforce her statutory rights. *See, e.g., Christen*, 2020-Ohio-3665, 154 N.E.3d 1192, at ¶ 45, 52 (affirming award of $23,500.00 in attorney fees on recovery of $850 security deposit under R.C. 5321.16(C)); *Schultz v. Wurdlow*, 10th Dist. Franklin No. 11AP-62, 2012-Ohio-3163, ¶ 1, 25-26 (trial court did not abuse its discretion in awarding $14,782.50 in attorney fees for recovery of $700 in damages on security deposit claim); *see also Miller*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, at ¶ 16 ("Proportionality is not synonymous with reasonableness. 'A "reasonable" fee must be related to the work reasonably expended on the case and not merely to the amount of the judgment awarded.'"), quoting *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855, ¶ 45 (10th Dist.); *cf. Bittner*, 58 Ohio St.3d at 144, 569 N.E.2d 464 ("'A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious * * * claims but relatively small potential damages to obtain redress from the courts.'"), quoting *Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

**Trial Court's Determination of Reasonable Fees**

{¶ 50} Alcorso's requested attorney fees were itemized in the affidavits submitted in support of her request for attorney fees and were supported by witness testimony. At the attorney fee hearing, Alcorso addressed each of the relevant

Prof.Cond.R. 1.5(a) factors, explaining how each such factor supported its requested attorney fee award. The record reflects that the trial court carefully considered Alcorso's request for attorney fees. Having presided over the trial proceedings, the trial court was very familiar with the case. The trial court asked questions during the hearing on attorney fees and stated the basis for its attorney fee determination in its November 19, 2020 judgment entry. The trial court rejected Alcorso's request for an additional $1,500 per day as a "trial expense" but otherwise found that both Attorney Mustafa's hourly rate[8] and the time he charged for the work performed through trial, on appeal and in preparation for the attorney fee hearing were reasonable.

{¶ 51} The record reflects that the parties in this case engaged in much more extensive litigation than might generally be expected in a dispute of this nature, including depositions, a mediation, the filing of a counterclaim and motion for summary judgment, numerous motions for continuances and a two-day jury trial. The record reflects that Correll vigorously defended against Alcorso's claim for return of her security deposit and vigorously prosecuted his counterclaim up to, and including, trial. Likewise, the record reflects that, in the initial appeal, Correll filed multiple motions, including a motion to dismiss the appeal, which necessitated the filing of a response by Alcorso. Although the time charged by Attorney Mustafa for certain of the tasks performed in connection with the initial appeal, such as a total

---

[8] Correll does not challenge the reasonableness of Attorney Mustafa's hourly rate.

of nearly 12 hours over six days to prepare for the Zoom oral argument, may have been more than we would have ordinarily expected given the limited issues in the case and the complexity involved, we cannot say, based on the record before us, that the trial court committed plain error with respect to its attorney fee award.

{¶ 52} We overrule Correll's second assignment of error.

{¶ 53} Judgment affirmed.

It is ordered that appellee shall recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Rocky River Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR